IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ISAAC W. MOORE,                      :
                                     :
        Plaintiff,                   :
                                     :
vs.                                  :
                                     :        CIVIL ACTION 16-0082-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
        Defendant.                   :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks
judicial review of an adverse social security ruling denying a
claim for disability insurance benefits (Docs. 1, 10).  The
parties filed written consent and this action has been referred
to the undersigned Magistrate Judge to conduct all proceedings
and order judgment in accordance with 28 U.S.C. § 636(c),
Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 19).
Oral argument was waived in this action.  After considering the
administrative record and the memoranda of the parties, it is
**ORDERED** that the decision of the Commissioner be affirmed and
that this action be dismissed.

This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time his disability coverage expired, March 31, 2011, Plaintiff was forty-nine years old, had completed high school and some trade school education, (Tr. Doc. 10, Fact Sheet), and had previous work experience as a housing inspector (Tr. 36). Moore alleges disability due to degenerative disc disease of the lumbar spine (Doc. 10 Fact Sheet).

Plaintiff applied for disability benefits on May 6, 2013, asserting a disability onset date of January 1, 2006 (Tr. 17, 145-49). An Administrative Law Judge (ALJ) denied benefits, determining that, as of the last day he qualified for disability benefits, March 31, 2011, Moore was capable of performing his past relevant work as a housing inspector (Tr. 17-24). Plaintiff requested review of the hearing decision (Tr. 28), but the Appeals Council denied it (Tr. 1-5).

Moore claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Plaintiff alleges that: (1) The ALJ's residual functional capacity (hereinafter *RFC*)

assessment is not supported by substantial evidence; and (2) the ALJ should have called a medical expert (hereinafter *ME*) to testify (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 13).  The Court will now summarize the relevant record evidence.

On June 1, 1992, records from the Department of Veterans Affairs (hereinafter *VA*) include a normal lumbar spine x-ray (Tr. 286, 300-01).

On March 14, 2012, USA Medical Center Emergency Department records show that Moore was treated for a headache and generalized achiness; a medium level of back tenderness was noted (Tr. 246-48).  A brain CT showed likely calcification; Toradol,[1] Norflex,[2] and Phenergan[3] were prescribed.

On March 24, Mobile Infirmary Medical Center Emergency Department records show that Plaintiff was treated for testicular pain diagnosed as epididymitis; Lortab[4] was prescribed (Doc. 235-42).

On September 10, Plaintiff complained of lumbar strain, exacerbated by sitting, standing, and excessive walking (Tr.

---

[1]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[2]*Norflex* is used to treat muscle spasms and pain. http://www.webmd.com/drugs/2/drug-6933/norflex-oral/details#uses

[3]**Error! Main Document Only.***Phenergan* is used as a sedative, sleep aid, or to treat nausea, vomiting, or pain. http://www.drugs.com/phenergan.html

[4]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

273-85; Tr. 378-90).  Delon Nicholas, Physician Assistant
(hereinafter *P.A.*), found that Moore walked without difficulty
and that his back exam was unremarkable.  The P.A. noted that
Plaintiff had objective pain while performing range of motion
(hereinafter *ROM*) assessment in forward flexion, extension, and
lateral flexion of the spine; there was no radicular pain and
Moore had no functional loss or impairment.  Plaintiff had
normal strength throughout with no muscle atrophy; reflexes and
sensory were normal.  Straight leg raising was negative.  An x-
ray showed disk space narrowing, degenerative spurring, and
degenerative facet disease at the L5-S1 level; minimal disk
space narrowing was noted at L4-5 level (Tr. 299-300).  Nicholas
noted that the diagnosis of lumbar strain was unrelated to the
x-rays as the strain involved soft tissues (muscles and
ligaments) while the degenerative process involved the discs and
vertebral bodies; the PA found that Moore's condition would not
impact his ability to work.

On December 30, 2013, Plaintiff went to the VA, complaining
of pain, at level seven on a ten-point scale, in his lower back,
legs, and elbows; he stated he did not believe in medication
(Tr. 376-77).  On January 3, 2014, Moore was encouraged to
exercise regularly and to follow a healthy diet as his weight
had increased and he was obese; blood pressure was elevated (Tr.
370-75).  On March 24, Moore went to the VA for left eye pain

and painless rectal bleeding; he was diagnosed to have
conjunctivitis (Tr. 365-70).  On April 4, Plaintiff complained
of leg numbness, starting in his lower back and radiating down
into his toes; he walked with a limp and rated his pain at ten
(Tr. 358-64).   Tenderness was noted in the paraspinal region of
L5-6, though muscle tone was normal; straight leg raise was
positive on the right.  Moore also had decreased ROM and
sensation of the right foot/ankle; Flexeril[5] was prescribed.  On
April 8, 2014, Plaintiff complained of rectal bleeding, though
denied any rectal pain; he did have lumbosacral pain, radiating
into his right thigh, and eye pain (Tr. 352-58).  Moore rated
his pain at nine; gait was normal.  The Doctor found
conjunctivitis in the left eye and diagnosed anemia and ordered
tests.  On April 15, Plaintiff underwent a stress EKG that
demonstrated no evidence of major ischemia (Tr. 297-99, 342-45).
On the same day, in an assessment before undergoing his
colonoscopy, Moore stated that he was in no pain at that time
(Tr. 346-52).  On April 18, an Optometrist diagnosed a viral
infection; medication was subsequently prescribed (Tr. 332-34,
341-42).  On April 21, Moore was treated for diabetes mellitus
type 2, instructed on diet and exercise, and prescribed
medication; he reported left eye and right leg pain at seven

---

[5]**Error! Main Document Only.**Flexeril is used along with "rest
and physical therapy for relief of muscle spasm associated with acute,
painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-
57 (48th ed. 1994).

(Tr. 334–41).  Body Mass Index was calculated to be 31,[6] categorizing Moore as obese.

On April 24, 2014, VA records show that Plaintiff underwent a colonoscopy because of blood loss anemia; four benign polyps were removed and diverticulosis was diagnosed (Tr. 314–32, 391–96).  On May 7, Moore was given written materials and oral instruction concerning weight loss, proper diet, and exercise (Tr. 312–14).  On May 14, Plaintiff complained of continued right leg pain, rating it as eight; medications (Flexeril and Ibuprofen) were not helping with the pain and were causing negative side effects (Tr. 306–10).  The Nurse noted that he walked without difficulty and was in no apparent distress.

This concludes the Court's summary of the record evidence.

In bringing this action, Moore first claims that the ALJ's RFC assessment is not supported by substantial evidence.  More specifically, Plaintiff points out that there are no RFC evaluations in the record from which the ALJ could reach his conclusions (Doc. 10, pp. 3–5).  The Court notes that Moore has pointed to specific language in which the ALJ discusses the lack of evidence:

> As for the opinion evidence, no treating physician has opined that the claimant is disabled or imposed any functional limitations related to the

---

[6]http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm

> claimant's lumbar strain, degenerative disc
> disease, or back pain.  There are no
> opinions in the record from a treating
> provider, examining physician, or non-
> examining physician.  The above [RFC]
> assessment is instead supported by a
> preponderance of the most credible evidence
> of record.  It includes treatment records
> from the VA showing no functional
> limitations related to the claimant's back
> pain, the dearth of treatment during the
> adjudication period, the claimant's history
> of conservative treatment even after the
> date last insured, and the claimant's work
> history after the alleged onset date.

(Tr. 23).

The Court notes that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3.  The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2016).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

In his decision, the ALJ reached the following conclusion:

> [T]hrough the date last insured, the
> claimant had the [RFC] to still perform a
> light level of work as defined in 20 C.F.R.

404.1567(b).[7]  However, he did not then and still does not now possess the physical ability to perform a "full range" of such work as contemplated within SSR 83-10. Specifically, the claimant could sit for 2 hours at a time, 6 hours total in an 8-hour workday, stand for 1½ hours at a time and for 4 hours total in an 8-hour workday, and walk for 30-45 minutes at a time, and for 2 hours total in an 8-hour workday.  The claimant could not climb ladders, ropes, or scaffolds.  The claimant could frequently to occasionally, i.e., 50% of the day, push or pull using his lower extremities, bend, stoop, crouch, and kneel.  The claimant could occasionally squat.

(Tr. 20).

Moore claims disability because of degenerative disc disease of the lumbar spine; it is the only impairment noted (Doc. 10, Fact Sheet).  The Court notes that the lone evidence of Moore's abilities before his date last insured, March 31, 2011, was a normal lumbar spine x-ray from June 1992 (Tr. 286, 300-01).  The next available medical records date to two emergency room visits, in March 2012, for a headache and

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  Section 404.1567(b) (footnote not in original).

testicular pain (Tr. 235-42, 246-48); though back tenderness[8] was
noted, there was no mention of functional limitations or
treatment.  It is only in the next medical note of record,
occurring on September 10, 2012, that Plaintiff complains of
back pain (Tr. 273-85; Tr. 378-90).  The examining P.A. noted
that although back pain was demonstrated in the ROM assessment,
there was no radicular pain, functional loss, or impairment; the
P.A. specifically noted that the impairment would not affect
Moore's ability to work.  This examination took place more than
seventeen months after Plaintiff's last insured date.

Moore has not pointed to any medical evidence—much less
evidence existing before March 31, 2011—that suggests that he
was incapable of performing his past light-work job.  Plaintiff
is reminded that he is responsible, under the social security
regulations, for providing evidence from which the ALJ can make
an RFC determination.  The Court finds no merit in Moore's claim
that the ALJ did not properly assess his RFC.

Plaintiff next claims that the ALJ should have called an ME
to testify.  Moore specifically asserts that an ME should have
been called to determine the date of his disability onset; he
further asserts that the ALJ's failure to call an ME is evidence
of his failure to develop the record (Doc. 10, pp. 2-3).

In making his argument, Plaintiff states as follows:

---

[8]Frankly, the Court believes the record states there is no
tenderness; however, as the note is handwritten and not entirely
clear, the Court gives Moore the benefit of the doubt (*see* Tr. 247).

> HALLEX I-2-6-70(A) states that "an ALJ is
> encouraged to consult with an ME when the
> Plaintiff alleges disability that began
> before his or her date last insured and the
> facts may conceivably support the claim."
> Social Security Ruling 83-20 recognizes that
> "in some cases, it may be possible, based on
> the medical evidence to reasonably infer
> that the onset of a disabling impairment(s)
> occurred some time prior to the date of the
> first recorded medical examination."

(Doc. 10, p. 2).

The Court notes that an ALJ "may also ask for and consider opinions from [ME's] on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404.1527(e)(2)(iii).  Furthermore, the Eleventh Circuit Court of Appeals requires that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court notes that although the HALLEX provides the opportunity for an ME to be called, it was not necessary in this

action as the medical evidence did not support a claim of disability prior to March 31, 2011, Plaintiff's last insured date.  The examining P.A., in September 2012, clearly found that Moore's impairments would not affect his ability to work.  Based on such evidence, it would not have been reasonable, under S.S.R. 83-20, for an ME to have found a disability onset date prior to September 2012.  Plaintiff's claim otherwise is without merit.

Moore has raised two claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be dismissed.  Judgment will be entered by separate Order.

DONE this 15th day of November, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE